**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **Vorys, Sater, Seymour and Pease LLP**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: |
| | : | |
| **Dermot Cawley; Patrizia M. Cawley; Cawley JV, LLC; LAK Corporation; Ferrion Corporation N/K/A Ferrion, LLC; Jones & Walden LLC; Cameron M. McCord; ABC Corporations 1-10 Addresses Unknown; XYZ LLCs 1-10, Addresses Unknown; and Jane and John Does 1-10, Addresses Unknown,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## COMPLAINT

Plaintiff Vorys, Sater, Seymour and Pease LLP ("Plaintiff" or "Vorys") for its

Complaint against Defendants Dermot Cawley ("Dermot Cawley"), Patrizia M.

Cawley ("Patty Cawley"), Cawley JV, LLC ("Cawley LLC"), Jones & Walden LLC

("Jones & Walden"), LAK Corporation ("LAK"), Ferrion Corporation n/k/a

Ferrion, LLC ("Ferrion"), Cameron M. McCord ("McCord"), ABC Corporations 1-

10, XYZ LLC's 1-10, and Jane and John Does 1-10 (collectively, the

"Transferor/Transferee Defendants"), states as follows:

**PARTIES**

1.      Vorys is a limited liability partnership that provides legal services, with a principal place of business located at 52 East Gay Street, Columbus, Ohio 43215.

2.      Dermot Cawley was a resident of the State of Georgia at the time of the fraudulent transfers that are the subject of this Complaint but is currently a resident of the State of Florida, 3968 Wardell Place, Orland, Florida, 32814.

3.      Patty Cawley is a resident of the State of Georgia, 155 Kentworth Circle, Milton, Georgia, 30004.

4.      Cawley LLC was a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business located at 14381 Club Circle, Alpharetta, GA 30004 (Dermot and Patty Cawley's former residence). Cawley LLC was administratively dissolved on August 26, 2019.

5.      LAK Corporation was a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 14381 Club Circle, Alpharetta, GA 30004 (Dermot and Patty Cawley's former residence). LAK was administratively dissolved on October 22, 2020.

6.      Ferrion Corporation N/K/A Ferrion, LLC was a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 14381 Club Circle, Alpharetta, GA 30004 (Dermot and Patty

Cawley's former residence). Ferrion Corporation was converted to Ferrion, LLC

(collectively, "Ferrion") in Florida on March 12, 2019. Ferrion, LLC is a limited

liability company organized and existing under the laws of the State of Florida, with

a principal place of business located at 3968 Wardell Place, Orlando, FL 32814

(Dermot Cawley's current residence). Ferrion Corporation was administratively

dissolved in Georgia on October 22, 2020.

7.      Jones & Walden LLC is a limited liability company that provides legal

services, with a principal place of business located at 699 Piedmont Avenue NE,

Atlanta, GA 30308.  At all relevant times defendant McCord was acting within the

course and scope of her employment or agency with Jones & Walden, which thereby

is liable for her conduct as described herein under the doctrine of *respondeat*

*superior* and it is likewise a transferee recipient of fraudulently transferred funds as

described below.

8.      Upon information and belief, Cameron M. McCord, who at all times

relevant was working within the course and scope of her employment as an attorney

at Jones & Walden, 699 Piedmont Avenue NE, and who is further a resident of the

State of Georgia.

9.      Defendants ABC Corporations 1-10, XYX LLC's 1-10 and Jane and

John Does 1-10 are entities and individuals whose names and addresses could not

be ascertained prior to the filing of this Complaint, but which/who, upon information

and belief, actively participated and engaged in the fraudulent transfers or were transferees of the money fraudulently transferred as described below.

## JURISDICTION

10.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

## VENUE

11.    Venue and jurisdiction over the Defendants are proper in this District pursuant to 28 U.S.C. § 1391, because Defendants maintain or maintained their place of business and/or reside or resided in the judicial district for the Northern District of Georgia during all times relevant to this action and it is the judicial district in which a substantial part of the events or omissions giving rise to these claims occurred.

## FACTUAL BACKGROUND

12.    Dermot Cawley, Cawley LLC and another related entity called Global Mill Supply, Inc. ("GMS") initially retained the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") to represent them in connection with a dispute among the members of a joint venture known as JV Iron & Metal, LLC ("JVR Iron").

13.     Later, in June 2014, Quinn Emanuel contacted Vorys to inquire about Vorys serving as local counsel in Ohio for Dermot Cawley, GMS, and Cawley LLC in anticipated litigation among the members of the JVR Iron (the "JVR Iron matter").

14.     Vorys agreed to represent Dermot Cawley, GMS, and Cawley LLC in connection with the JVR Iron matter.

15.     Litigation ensued between the members of JVR Iron, which was filed in the State of Ohio, Cuyahoga County Court of Common Pleas, Case No. CV-14-829204 ("JVR Iron litigation").

16.     During the JVR Iron litigation, Patty Cawley was added as a third-party defendant, and Vorys agreed to represent her in the JVR Iron litigation.

17.     Dermot Cawley, Patty Cawley, GMS, and Cawley LLC (the "Vorys Clients") agreed to pay Vorys for all of Vorys' legal fees and expenses upon their receipt of Vorys' invoices detailing services performed in the JVR Iron matter and the JVR Iron litigation.

18.     In 2014, a receiver was appointed over the JVR Iron and its assets in the JVR Iron litigation.

19.     By the Spring of 2015, the Vorys Clients had become delinquent in their payment of legal fees and expenses to Vorys.

20.     In a confirmation email on November 30, 2015, Mr. Cawley agreed that the amount of $747,798.49, billed by Vorys as of that date, was a valid debt owed to

Vorys, agreed to pay off the remaining balance upon the funding of a line of credit to GMS (and make specified payments in the interim), and agreed to pay all future invoices within 15 days of receipt.

21.    By at least 2016, the Vorys Clients had once again become delinquent in their payment of legal fees and expenses to Vorys and failed to fulfill the terms of their agreement referenced in the preceding paragraph.

22.    During several telephone conversations in the summer and fall of 2016—including during a telephone call between Mr. Cawley and F. Daniel Balmert of Vorys on August 30, 2016—Mr. Cawley, acting on behalf of himself and GMS and Cawley LLC, expressly represented to Rajeev K. Adlakha of Vorys and to Mr. Balmert that they did not contest the amounts owed to Vorys and that they fully intended to pay those amounts, as well as amounts incurred in the future, out of the proceeds of the JVR Iron litigation. These representations were made in order to induce Vorys to continue its representation of the Vorys Clients, forbear from collecting on the amounts owed, and, ultimately, enter into security and pledge agreements with Dermot Cawley, GMS, and Cawley LLC.

23.    Contrary to their representations, Mr. Cawley, GMS, and Cawley LLC had no intention to pay the amounts owed to Vorys.

24.    Nevertheless, in order to induce Vorys to continue to provide legal services, on or about January 6, 2017, GMS and Cawley LLC each entered into

separate security agreements and pledge agreements with Vorys, whereby Vorys was granted a security interest in the collateral as defined in those agreements, which specifically included any amounts paid to the Vorys clients in settlement of their claims. True and accurate copies of the agreements are attached hereto as Exhibits A–D.

25.    In addition, Dermot Cawley entered into a pledge agreement with Vorys on or about January 6, 2017. A true and accurate copy of that agreement is attached hereto as Exhibit E.

26.    Upon information and belief, Dermot Cawley, GMS, and Cawley LLC did not actually intend to perform their obligations under the pledge and security agreements at the time they entered into them, but misrepresented these facts in order induce Vorys to continue its representation of the Vorys Clients, forbear from collecting on the amounts owed, and enter into the security and pledge agreements.

27.    A mediation among the JVR Iron matter litigants was conducted in March, 2018    during which an agreement was reached to settle the JVR Iron litigation claims for $3,064,511.16.

28.    Upon information and belief, McCord, Dermot Cawley's bankruptcy attorney at Jones & Walden and co-counsel with Vorys for the Vorys Clients in the JVR Iron litigation, counseled Dermot Cawley as to how to transfer the funds

received from the JVR Iron litigation settlement to himself in Georgia, and thereby avoid paying Vorys and breaching the pledge and security agreements.

29.     As a consequence, Dermot Cawley, unbeknownst to Vorys, created a Georgia corporation called LAK Corporation on May 8, 2018, and opened a bank account for the newly created corporation at BB&T Bank in Georgia.

30.     On or about May 15, 2018, unbeknownst to Vorys, McCord, with full knowledge of the existence of the security and pledge agreements in favor of Vorys, then secretly instructed the receiver for JVR Iron to wire transfer the settlement funds to Cawley LLC's bank account also held at BB&T bank located in Georgia.

31.     Then, immediately upon receipt of the settlement funds in the Cawley LLC bank account and unbeknownst to Vorys, Cawley LLC, with full knowledge of the obligations in the Vorys' security and pledge agreements, transferred the settlement funds to the BB&T bank account for LAK Corporation, which was controlled exclusively by Dermot Cawley.

32.     Thereafter, LAK Corporation transferred millions of dollars of settlement funds to various creditors of Dermot Cawley and Patty Cawley, including but not limited to $1.1 million to Ferrion and $159,381.86 to Jones & Walden.

33.     The Vorys Clients failed and/or refused to use any of the settlement funds to pay legal fees and expenses owed to Vorys by secretly sending them out of state beyond the reach of Vorys.

34.     On June 6, 2018, after Vorys learned that the settlement funds had been transferred by the receiver to Cawley LLC, Vorys made a demand of the Vorys Clients for payment of legal fees and expenses then due and owing.

35.     To date, the Vorys Clients, two of which (GMS and Cawley LLC) have been dissolved by Dermot Cawley, have failed to pay Vorys any of the outstanding balance of the legal fees and expenses incurred by them in connection with the JVR Iron matter and the JVR Iron litigation.

## COUNT ONE
### (Intentional Fraudulent Transfers Against the Transferor/Transferee Defendants)

36.     Vorys incorporates by reference all prior allegations as if fully rewritten herein.

37.     Vorys is a creditor of Dermot Cawley, Patty Cawley, GMS, and Cawley LLC, and was entitled to payment on the security and pledge agreements from the JVR Iron litigation funds.

38.     Vorys is a creditor of Dermot Cawley, Patty Cawley, GMS, and Cawley LLC, and was entitled to payment based on Dermot Cawley's numerous representations to Vorys described above.

39.     Dermot Cawley created and controls/controlled Cawley LLC, LAK, and Ferrion.

40.     The settlement funds were transferred to and/or from, among others, Cawley LLC, LAK, Ferrion, Jones & Walden and Patty Cawley and deprived the Vorys Clients of the means to satisfy the obligations to their creditor(s).

41.     The Transferor/Transferee Defendants made their transfers of assets with the actual intent to hinder, delay or defraud their present or future creditors, including Vorys.

42.     The Transferor/Transferee Defendants' transfer of assets are marked by multiple "badges of fraud," as indicated by O.C.G.A. § 18-2-74(b), including but not limited to:

   a. Transfers of all or substantially all of the assets to the other defendants or for their personal benefit;

   b. Transfers to and among insiders;

   c. The transfers were concealed;

   d. Dermot Cawley retained possession or control of the property after the transfer;

   e. The Vorys Clients (debtors) were or became insolvent shortly after the transfers were made;

   f. The transfers occurred shortly after a substantial debt was incurred;

   g. The transfers were for either no consideration or for far less than reasonably equivalent value;

h.  The transfers were made with the specific knowledge that the Vorys Clients (debtors) would be unable to pay Vorys; and

i.  The transfers were of substantially all of the assets of the Vorys Clients.

43.   The Transferor/Transferee Defendants' transfers were fraudulent and voidable under the laws of the State of Georgia, including, the Georgia Uniform Voidable Transaction Act, § 18-2-70, *et seq.*, effective July 1, 2015.

44.   All of the transfers were made, and all obligations arose, after July 1, 2015.

45.   As a result of the Transferor/Transferee Defendants' misconduct and transfers, Vorys is entitled to the funds and assets traced to the transferees and for avoidance of the transfers at issue, up to the then-current amount of the debt owed to Vorys, including prejudgment interest.

## COUNT TWO
**(Constructive Fraudulent Transfers Against the Transferor/Transferee Defendants)**

46.   Vorys incorporates by reference all prior allegations as if fully rewritten herein.

47.   Vorys is a creditor of Dermot Cawley, Patty Cawley, GMS, and Cawley LLC, and was entitled to payment on the security and pledge agreements from the JVR Iron litigation funds.

48.     Vorys is a creditor of Dermot Cawley, Patty Cawley, GMS, and Cawley LLC, and was entitled to payment based on Dermot Cawley's numerous representations to Vorys described above.

49.     Dermot Cawley created and controls/controlled Cawley LLC, LAK, and Ferrion.

50.     The settlement funds were transferred to and/or from, among others, Cawley LLC, LAK, Ferrion, Jones & Walden and Patty Cawley and deprived the Vorys Clients of the means to satisfy the obligations to their creditor(s).

51.     The Transferor/Transferee Defendants received either no consideration or less than reasonable equivalent value for the settlement funds transferred among them.

52.      The Transferor/Transferee Defendants' transfers of assets constitute fraudulent and voidable transfers, which had the effect, individually or collectively, of leaving the Vorys Clients unable to satisfy their debts as they came due and left Vorys with no reasonable means of recovery for the monies owed to it.

53.     Upon information and belief, as a result of the transfers, the Vorys Clients are insolvent.

54.     Upon information and belief, as a result of the transfers, the debtors are left with unreasonably small capital/assets to pay their debts following the transfers.

55.    The Transferor/Transferee Defendants' transfers were fraudulent and voidable under the laws of the State of Georgia, including, the Georgia Uniform Voidable Transaction Act, § 18-2-70, *et seq*., effective July 1, 2015.

56.    All of the transfers were made, and all obligations arose, after July 1, 2015.

57.    As a result of the Transferor/Transferee Defendants' misconduct and transfers, Vorys is entitled to the funds and assets traced to the transferees and for avoidance of the transfers at issue, up to the then-current amount of the debt owed to Vorys, including prejudgment interest.

## COUNT THREE
### (Civil Conspiracy Against Cawley and McCord)

58.    Vorys incorporates by reference all prior allegations as if fully rewritten herein.

59.    Upon information and belief, after the Vorys Clients' obligations arose under the Vorys security and pledge agreements, Dermot Cawley and McCord, acting in concert (and with McCord acting within the course and scope of her employment with Jones & Walden) conspired to develop a plan for transferring the settlement funds to avoid the Vorys Clients' obligations to Vorys.

60.    The plan they came up with involved, secretly and without Vorys' knowledge, having the Receiver transfer the settlement funds to a Cawley controlled bank account held by Cawley LLC.

61.     Upon receipt of the settlement funds, Cawley LLC then fraudulently transferred the funds to LAK, a Georgia corporation created just a week before the transfers and entirely controlled by Dermot Cawley.

62.     LAK then fraudulently transferred funds to Ferrion, a Georgia corporation also created and controlled by Dermot Cawley.

63.     LAK then further fraudulently transferred funds to creditors for the benefit of Dermot Cawley and Patty Cawley as described on the attached Exhibit F.

64.     The fraudulent transfers each constitute a tort under Georgia law.

65.     As a result of these fraudulent transfers, orchestrated by McCord and Dermot Cawley, Vorys has suffered damages in an amount up to the then-current amount of the debt owed to Vorys, including prejudgment interest.

## **COUNT FOUR**
### **(Uncapped Punitive Damages Against Dermot Cawley and Ms. McCord)**

66.     Vorys incorporates by reference all prior allegations as if fully rewritten herein.

67.     Dermot Cawley and McCord's conduct exhibits such willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences, and Vorys is, therefore, entitled to punitive damages in an amount to be determined at trial.

68.     Dermot Cawley and McCord undertook their malicious conduct with knowledge and specific intent to cause financial damage to Vorys with the intent to enrich Dermot Cawley and others.

69.     Vorys is therefore entitled to uncapped punitive damages from Dermot Cawley, McCord and Jones & Walden pursuant to O.C.G.A. § 51-12-5.1(f) to be determined at trial.

## COUNT FIVE
### (Attorneys' Fees and Costs Against All Defendants)

70.     Vorys incorporates by reference all prior allegations as if fully rewritten herein.

71.     All Defendants have acted in bad faith, causing Vorys unnecessary time, trouble and expense.

72.     Vorys has incurred attorney's fees and expenses in connection with having to file and pursue its claims in this action.

73.     Under O.C.G.A. § 13-6-11, Vorys is entitled to recover its expenses of litigation, including attorney's fees, expenses, and costs.

**WHEREFORE,** Plaintiff Vorys, Sater, Seymour and Pease LLP respectfully demands the following:

(A)   Under Count One, judgment against the Transferor/Transferee Defendants, jointly and severally, for compensatory damages in the amount of $1,178,886.30, plus attorneys' fees, interest, and costs;

15

(B)   Under Count Two, judgment against the Transferor/Transferee Defendants, jointly and severally, for compensatory damages in the amount of $1,178,886.30, plus attorneys' fees, interest, and costs;

(C)   Under Count Three, judgment against the Defendants Dermot Cawley, McCord and Jones & Walden, for compensatory damages in the amount of $1,178,886.30, plus attorney's fees, interest, and costs;

(D)   Under Count Four, judgment against Defendants Dermot Cawley, McCord and Jones & Walden, for uncapped punitive damages, as set forth above, in an amount to be determined at trial;

(E)   Under Count Five, judgment against all Defendants, for an award of Vorys' reasonable attorney's fees and costs of this litigation; and

(F)   Such other and further relief as this Court may deem just, proper, and equitable.

RESPECTFULLY SUBMITTED, this 16th day of May 2022.

BUCKLEY KING, LPA


_____
Brent M. Buckley, Esq.
GA Bar No.: 142517
Robert F. Dallas, Esq.
GA Bar No.: 203503

16

Five Concourse Parkway, Suite 2600
Atlanta, GA  30328
770-331-4040
buckley@buckleyking.com
rdallas@buckleyking.com
Counsel for Plaintiff
Vorys, Sater, Seymour and Pease LLP